WASHINGTON GAS LIGHT CO. v. PUBLIC UTILITIES COMMISSION OF DISTRICT OF COLUMBIA et al.

Civ. A. No. 22173.

District Court of the United States for the District of Columbia.

June 27, 1944.

628

E. Barrett Prettyman, F. G. Awalt, and C. Oscar Berry, all of Washington, D. C., for plaintiff.

Richmond B. Keech, Vernon E. West, and Lloyd B. Harrison, all of Washington, D. C., for defendant.

BAILEY, Justice.

In Federal Power Commission et al. v. Hope Natural Gas Co., 320 U.S. 591, on page 603, 64 S.Ct. 281, on page 288, the Supreme Court, in referring to the Natural Gas Act of 1938, 15 U.S.C.A. § 717 et seq., said: "The rate-making process under the Act, i. e., the fixing of 'just and reasonable' rates, involves a balancing of the investor and the consumer interests. Thus we stated in the Natural Gas Pipeline Co. case [Federal Power Commission v. Natural Gas Pipeline Co., 315 U.S. 575, 62 S.Ct. 736, 86 L.Ed. 1037] that 'regulation does not insure that the business shall produce net revenues.' 315 U.S. at page 590, 62 S.Ct. at page 745, 86 L.Ed. 1037. But such considerations aside, the investor interest has a legitimate concern with the financial integrity of the company whose rates are being regulated. From the investor or company point of view it is important that there be enough revenue not only for operating expenses but also for the capital costs of the business. These include service on the debt and dividends on the stock. Cf. Chicago & Grand Trunk R. Co. v. Wellman, 143 U.S. 339, 345, 346, 12 S.Ct. 400, 402, 36 L.Ed. 176. By that standard the return to the equity owner should be commensurate with returns on investments in other enterprises having corresponding risks. That return, moreover, should be sufficient to assure confidence in the financial integrity of the enterprise, so as to maintain its credit and to attract capital. * * *" and again on page 605 of 320 U.S., on page 289 of 64 S.Ct.: "* * * Rates which enable the company to operate successfully, to maintain its financial integrity, to attract capital, and to compensate its investors for the risks assumed certainly cannot be condemned as invalid, even though they might produce only a meager return on the so-called 'fair value' rate base. * * *"

Taking as necessary that rates to be valid, not only under that Act, but generally, must "enable the company to operate successfully, to maintain its financial integrity, to attract capital, and to compensate its investors for the risks assumed," there was no substantial evidence before the Commission to support its findings. A mere general opinion of the Commission, unsupported by findings of fact based on substantial evidence, is of no effect.

The question before the Commission was what constitutes a reasonable allowance based on the cost of the common stock capital. By cost of capital is meant interest charges and enough more to attract capital to the company, and to maintain its credit. Both the Commission and the Company's witnesses used earning price ratios as the principal method of ascertaining the investors' appraisal of the return required on the common stock capital. The Commission's witness found that the investors' appraisal of the return required on the common stock capital of the company was 11.68% and the company's witnesses fixed it at 10.98%, both exclusive of the cost of financing. The earnings-price ratio of the six gas companies to which the Commission's witness testified was 10.54%. In its findings the Commission adopted neither of these facts as the cost of common stock capital. It substituted 9% as a reasonable allowance and amended the sliding scale order of 1935 so as to reduce the primary rate of return from 6½% to 5¾%.

This allowance of 9% is not supported by any substantial evidence and is arbitrary, unreasonable, and void.

The Commission found that the amount of expenses of the Company for legal services was unreasonable and disallowed one-half of the amount. I find no evidence in the record justifying this reduction.

The order of the Commission should be set aside.